Good morning, Your Honors. My name is Albert Young. I'm here with my colleague Lynette Lee and our client, Ms. Chavez-De-Estrada. May it please the Court. Good morning. Good morning. I'd like to reserve three minutes for a reply. Okay, I'll try and help you. Thank you so much. Your Honor, per this panel's order, in terms of Barajas, this case is a little bit like Barajas Plus. We have some infliction of torture by a high-ranking police officer with unique power over the victim. Two, you have a pattern, not just one, but a series of incidents involving that police officer. Three, you have repeated acquiescence, more than one instance where police were aware of and failed to intervene to prevent the activity in question. Counsel, I'm not sure how relevant my question is, but can you help me with an issue with regard to the factual record? Sure, Your Honor. I'm not quite sure I understand what the Tijuana Bureau of Commercial Police is. I'm sorry, it's Auxiliary and Commercial Police. Is that different from the police department for Tijuana? Is there any clue in the record as to what police agency we're talking about here? I actually, I don't have clarity on that either, Your Honor. I know that in the record there was evidence that Officer Gonzalez, the perpetrator in this case, was basically of a local unit, a high-ranking official in that local unit. I know at some point, Ms. Estrada had to go to a different, I think, municipal high-ranking officer who then told her to, if you want to work, you have to go back to your abuser. I guess the basis for my question was, and again, I'm not sure it's controlling, but the basis for my question was at some point there was a an act of domestic violence where she needed a police escort to get her clothing out of the house, but it was a different jurisdiction and that's what was confusing to me as to whether he was a deputy commander over those police officers or it was a different agency or... That was unclear to me as well and I do not assume, Your Honor, that either the first responding officers or the people that were called within that jurisdiction either knew who Officer Gonzalez was or therefore that was a reason they weren't afraid of him. There's just nothing in the record from what I can tell that we can assume that. Unfortunately, I think that's what the BIA and the IJ did. They said, well, you know, reports were taken and technically there was an escort, so why isn't she insulated from helping? We don't think that's the right analysis, Your Honor. Well, I may be mistaken, but as I read the record, wasn't her home in a different judicial district than the office, the police office, when they said we don't have jurisdiction, it's outside our district? That's right. So the original, where she radioed for police in the first instance was a different local jurisdiction and so she said that the officers there said just when it's time you call your local when you get there, you call your local jurisdiction to maybe help you out there. There's no evidence in the record that when she did so, she either leveraged any tie to that local jurisdiction or that those people, you know, knew who Officer Gonzalez was. They were just responding to her call there. So what were the local, excuse me, what were the government authorities that she went to who did nothing? Your Honor, I think there was kind of a series of instances where that could be. I mean, there is no question that the person who is abusing her, if you will, is the, is a government authority and therefore the government is doing what they do because he's there based on Barajas-Romero. And I'm not sure in Barajas-Romero that we even need to go any further than that, do we? So whether she went to government authorities who would have helped her or she didn't go to authorities and therefore they never had the chance to help her, are you suggesting that's not even an issue in this case? I think Barajas and cases prior to Barajas stand for the proposition that if the police themselves inflict the torture at issue, that that is sufficient to find eligibility for cat relief. So therefore, as to cat relief, if the police do it, it doesn't matter that she didn't go talk to anybody to try to throw them out or try to do something with them. The very mean, very act of doing it is enough. Yes, Your Honor. In Barajas, there were four off-duty police officers, and yet this circuit still found that that was sufficient. The fact that they themselves were the police was more than sufficient for the more than likely standard, Your Honor. I'd like to go to Judge Smith's question about do we even have to get to Barajas? When some of these acts occurred, he was in uniform, he had guns, he had handcuffs, et cetera. So do we even have to go to Barajas to reach a conclusion in this case? I think Barajas merely confirms kind of a line of cases about state action before that, Your Honor. So I would say that if you find, as the record I think compels this finding, that there is clear state action by a public official, you don't have to reach the acquiescence prong, that is sufficient to find more than likelihood of torture going forward and eligibility for relief, Your Honor. And so is your petition now limited to CAT? That is the issue that we briefed, Your Honor, yes. Withholding, I think it was briefed earlier kind of in the procedural history, but here there's a clear eligibility for CAT under deferral. So we don't need to even address withholding? I think withholding is a trickier claim because of the particular case. I didn't ask you whether it was trickier. I said, do I have to address it even? If Your Honor thinks that she's also eligible under withholding of remuneration. I'm not asking whether I think it, I'm asking are you suggesting that based on your pleading and your appeal here that I have to determine that issue? No, we didn't brief. We primarily briefed CAT, Your Honor. Okay. Do you want to save some time for rebuttal? I would love that, Your Honor, unless there are any further questions. I have one question about how Maldonado v. Lynch impacts your argument concerning internal relocation and country conditions. And the burden of proof here about indicating whether it's possible. Yeah. And I think Maldonado doesn't restrict this Court's ability to order actually directed CAT relief, and I think in the few cases where the Court has remanded for kind of a question, for example, Barajas, right, was a case where that happened where it wasn't, I think there was some doubt by the panel about, you know, if we were to remand it back to the agency, we really don't know what the right results should have been, things of that sort. And that was the Maldonado burden shifting issue. Well, but the Board didn't really consider country conditions at all, did it? Both the Board and the I.J. addressed country conditions, Your Honor, in this case. And I will point you to the sites where that was true. They did address country conditions, but did they address it in reference to the relocation issue? There was not much of an explicit discussion of relocation, but... And it's my understanding that they didn't address it. And the reason I don't think they needed to address it, and I I'm just trying to make sure you agree with me, is because your client has the burden to prove she can relocate, not the government. So therefore, if in fact she did not mount any proof there, the decision, the BIA need, did not need to address the issue. I disagree slightly, Your Honor. The regulation says you have to look at all of the evidence, and so the government had an obligation to... Just a one that says your client has the burden as it relates to relocation. As the Maldonado case. That, right. But the Maldonado case says that it's not a burden-shifting case. What it says is that you have to consider all the evidence there. There is not an affirmative burden in the first instance on the applicant themselves. And so here, Your Honor, the government had not one but two opportunities to rebut country conditions evidence and to address relocation. There was questioning on the issue of relocation, and Ms. Chavez-Diostrada said, I fear him everywhere. His reach extends beyond this little town. I'm afraid of going back because of him. This should not be a do-over case for the government. This has gone up and down the IJ twice now, and I think the record is clear. There's no real new facts. This falls with... But the problem is that the board was considering the case without the where we have it now in acquiescence by the government in connection with the violence. So it seems to me it's a different analysis than it may have been before. I think Barajas merely crystallizes existing law at the time the BIA touched this. Madrigal had been decided by the time the BIA had this case, 2013. The BIA knew about this court's understanding about state actor who was a public official, things of that sort. But with regard to future harm, as I understand it, he is no longer a police official because he spent some time in prison, but the record suggests that he somehow still has ties to the department even though he's no longer there. The record is at best ambiguous as to him not being an officer now. It says that there's a pending investigation. Well, I read somewhere that he went to prison. There's an allegation that he went to prison and that when he came out, he immediately asked, where was Ms. Chavez D'Estrada? Counsel, that's not my question. My question is, if he went to prison, he's presumably no longer a police official while he's in prison. I don't think Mexico has gone quite that far. Your Honor... And therefore, it's a different analysis, is it not? In terms of future harm? I don't think so, Your Honor, because, again, I think that very same page, if I'm remembering correctly, it did say that he might have gone to prison. This was the – I think the summary of the Perez testimony. Right, yeah, exactly. Right? And there it says – let me see if I can find the exact site here. There was – it was not conclusive as to whether he – in fact, I think there might have been an explicit discussion about how he – there's a pending decision about whether he can go back onto the force. So that's the best case scenario we have in the record here, Your Honor. What's your best case for this idea that you just gave to me, that if it's done by a government official that the government has acquiesced and you don't have to look at whether she did anything to stop him? In other words, in the person, and I went to the government and the government didn't do anything. In this particular action, we're saying you don't have to go to the government and the government not do anything. Just the mere fact that this was done by the government was enough. But to me, Barajas is the best case for that idea. Actually there is a case that we referenced in a footnote in our opening brief. Well, tell it to me. It's called Avendano, and here's the site, 800 F. 3rd, 1072. This was actually mentioned in our opening brief. It hadn't been decided yet, and it was decided after the briefing was completed. Avendano was – Oh, but the reason I ask the question, the reason I ask the question, it seems to me that Barajas Romero is the case which now lays out the appropriate standard, and therefore ought to be sent to the BIA to, if you will, apply in this particular matter. Avendano went further than Barajas, Your Honor. But Avendao is not a case that even you admit, not a case that was decided before this case came up. So again, even if Avendao is something the BIA ought to look at this instance based on Barajas and Avendao, if you want. Prior to the IJ and the BIA's decisions, both Nuru and Edu have been decided. Both of those acknowledge that this panel has discretion. When basically there are no remaining questions, the facts and the law have been submitted, that this Court can order – Well, I understand what you're asking us to do, but the Supreme Court made it non-immigration officials, and it seems to me that we've got a moving target here with regard to changes in the law that may impact this case, and that the prudent thing to do would be to send it back to the Board to look at it again in light of these new authorities, because I do think it changes the analysis. That is obviously within this panel's discussion, but here's how I think about it. If you believe that the law in Barajas changed so fundamentally, and we would argue that the state action principles that were articulated – No, I think you've made your point. You're about 4 minutes and 40 seconds over. Let's hear from the government. Further on. Thank you very much. May it please the Court. Dawn Conrad for the United States Attorney General. In this case, there's no dispute that Petitioner was the victim of severe domestic violence at the hands of her police officer boyfriend. There actually hasn't been a finding yet of past torture in this case, so that would be something that if this Court does remand it, that the IJ should consider in the first instance. The IJ only found past persecution, not past torture. Second, we don't believe that Barajas definitely requires remand in this case. Yes, he was a police officer when he committed these domestic violence acts, but Barajas also requires acquiescence, and in Barajas – Well, it does seem to suggest that if the violence is perpetrated by police officers, that that constitutes governmental involvement, which, as I understand that case, equates to acquiescence if they are the actual actors. Am I wrong? Well, it does seem to suggest that the actions are not required to be under color of law, as we have previously argued in this Court. I mean, the problem is that, you know, if your argument is it wasn't committed within the course and scope of his employment as a police official, as Judge Nelson points out, some of these acts of violence occurred in his police car while he was in uniform, using his handcuffs and whatever else he used to abuse her, and that's going to be a pretty tough road for the government to if your position is that that wasn't abuse committed by a police officer. I understand, and our position was in our brief that even though he was a police officer and, yes, some of these acts occurred while he was in his uniform, it was based on their personal relationship, not on his relationship as a police officer. I understand that, but I have in mind all those cases, you know, involving Sikhs where they're taken to the police station and, you know, hung by their hands at the police station. We haven't had any difficulty in concluding that that kind of conduct is torture in the meaning of the convention committed by officials of the government. So I guess I'd really be more interested to hear what your position is with regard to the laws that relates to changed country conditions and relocation. Okay, Your Honor. Basically, future. Yes, well, we believe that if this court finds that under Barajas now we have sufficient state action, which is basically the agency denied this case because they found there wasn't sufficient state action, then it has to go back, and it has to be remanded for the court to, like I said before, determine if there was past torture, and second, to consider the likelihood of future torture, which hasn't been considered yet in this case because they denied, the board denied it on the grounds of not sufficient state action, and they didn't have Maldonado yet. That hadn't been decided yet. We didn't have Barajas, so there has been... Do you contemplate a remand to the board, and then presumably the board would remand to the IJ to reopen the merits hearing, if that's the right word, in order to take additional testimony to make that determination? I believe that's necessary here because the likelihood of torture is a factual finding that the IJ would have to find in the first instance, and we don't have that finding so far. One thing that puzzles me is I don't understand why her lawyer waived consideration of the Perez-Perez testimony because it seems to me that's directly relevant to the issues that we're concerned about here. I don't know the answer to that either, Your Honor, and perhaps she has an ineffective assistance of counsel claim against that prior attorney, but that's not something that's been exhausted at this point. Well, let me ask another question. Putting Barajas aside, why didn't the BIA err in assuming that because there was a romantic relationship between Gonzales and Chavez-Estrada, that Gonzales' conduct could not have satisfied the state action requirement just because there was a romantic relationship? I think that BIA was applying the law at the time, which hadn't clearly rejected the color of law argument that other circuits have adopted. It's not just enough that you're a government official who commits the torture or the violence. You have to show that you were acting under a color of law, and in the Board's opinion, this was based on their domestic relationship. Even though he was a police officer, his relationship was because of and based on their personal relationship, not having to do with his official duties. Would that argument hold water if, by virtue of his position in the police agency, he was able to squelch any official investigation into his behavior or other officers were afraid to come to her assistance because he was their commander? Um, that might have an effect on this, but in this case, you actually have evidence of police officers coming to her aid, police officers from another jurisdiction, as well as police officers coming from her office when her, I believe, her ex-husband was being beaten up by her boyfriend. As I recall the record, didn't she present her complaint and present herself to a local district attorney in Tijuana to try and get the prosecutor to do something? I believe she did file a complaint, also, but also we don't have in the record what exactly she told them. But nothing, there's nothing in the record to suggest that the local prosecutor ever did anything. We don't know what happened with that one way or the other, Your Honor. Well, didn't one, when she made a complaint, one place, they said, we have no jurisdiction, you'll have to make your complaint someplace else? I think what happened was when they had, um, when she called the police officers when her boyfriend was beating up her ex-husband at the time, the police officers from her district responded, her boyfriend fled the scene. And then she said to her district police officers, I need to be able to get into my house to retrieve my clothes. And they said, you'll have to call the jurisdiction, the police officers with the jurisdiction over your residence, which she did. And they responded and helped her. Can you answer the question that I asked your opposing counsel at the very beginning with who are these police agencies? I'm really confused in reading this record. I don't know the answer to that. I think it's unclear from the record, Your Honor. Okay. All right. No further questions? Anything further? No. I think not. Thank you. All right. I'll give you a couple minutes in rebuttal. Thank you, Your Honors. I just want to address two quick points that were raised by the government. The first is on the suggestion that there was no finding of torture here, Your Honor. Although the IJ said that there was probably persecution here, she actually used the term persecution, she did so in the part of her decision where she was already talking about the Convention Against Torture.  She used the term harm, I think, as I recall correctly. Did she not? In her oral decision in 2012, she said, here's the part where I talk about the Convention Against Torture. What happened to her does seem like persecution. And then she goes on to talk about more torture. But she used the term harm rather than torture. She used the term persecution, I think, if I'm looking at it. Did she not use the term harm? I thought she was sort of choosing her words carefully without trying to put labels on it. I think definitely there was a mention of persecution. And here's actually, I think, the more interesting thing. And a mention of harm. And a mention of harm. And the question is, does that constitute a finding of torture under the convention? It does, given the circumstances here. In 2011, in her first oral decision, she actually explicitly found no torture, that the same conduct didn't rise to the level of torture. This I.J. knows how to explicitly say, this was not torture. What she did in 2012- That's why I thought she was being very careful about her choice of words. I think it was actually sloppiness, where you begin to talk about the Convention Against Torture, quickly mention, there was persecution here, and then keep talking about torture. There is more than ample evidence for this panel to find torture. Quickly on the second point, which is the suggestion that there was no decision on likelihood, Your Honor. First, Nuru says that the principal factor in determining likelihood of future torture is past torture. Secondly, we would argue that this I.J. has had two passes at this. This is the same I.J. that was in Avendano, the case that I mentioned. This is a repeating instance where this judge, I have no confidence whatsoever- Counsel, I think your argument is exceeding the scope of the government's argument. You made this argument the first time around. We heard it. And you're out of time. Okay, Your Honor. I think we have your argument well in hand. All right. The case just argued is submitted, and we are adjourned. Thank you, Your Honor.
judges: D.W. Nelson, Tallman, N.R. Smith